In the Matter of the Application of THE CITY OF NEW YORK, Relative to Acquiring Title, Wherever the Same Has Not Been Heretofore Acquired for the Same Purpose in Fee to the Real Property Required for the Widening of Boscovel Avenue, from Jerome Avenue to University Avenue, Borough of the Bronx, City of New York.

Supreme Court, Special Term, Bronx County, November 23, 1936.

*Paul Windels, Corporation Counsel* [*Henry R. Bright* and *Milton I. Newman* of counsel], for the city of New York.

*Harold Swain*, for the claimant, Gustave Halpern.

COTILLO, J.   On June 22, 1931, the city of New York, pursuant to the Greater New York Charter, acquired title to property on Boscovel avenue to widen it.   In this proceeding part of Halpern's land and apartment house building which abutted on that avenue was taken.   After the taking and the physical destruction of part of the claimant's building, more than half of the building was left intact.

The trial for the assessment of damages came on before me in June, 1932, at which time Halpern still held title to the remainder of the property.   The main issue at the trial and which was involved in the subsequent appeals related to the assessment of consequential damages to the residue of the building, after the partial taking.

There was no dispute that some compensation should be made for damage to the remainder of the land and building.   The question, however, was whether the partial taking of the building rendered the part of the building remaining worthless.   The claimant and his witnesses testified that the practical and economical course to adopt would be to tear down the building and construct a new one, contending that in legal effect the taking was total.   The city, on the other hand, insisted that the remaining part of the building was both practically and economically useful and asserted that claimant would be properly compensated by a payment of $150,000, $113,000 representing the value of the building taken, and $37,000 being allowed as the fair and reasonable value of repairing the remainder. In the face of such directly conflicting testimony and theories, the trial judge leaned to the claimant's view, influenced by his uncondtional assurance that if an award were made for a total destruction, the claimant would tear down the remaining part of the building.

Claimant was awarded $300,000 for the taking of the building on the theory that the partial demolition constituted a total destruction of the building, relying on claimant's promise made in open court to tear down what remained. The award was affirmed by the Appellate Division and the Court of Appeals.

After the trial, and after the making of solemn promises to the court under oath as to his future activity with regard to the part of the building remaining, the claimant without receiving any consideration transferred title to the land and building remaining thereon to his wife on September 13, 1932.

Subsequent to the final decree of the trial court on January 8, 1934, title to the premises was again conveyed, this time from Halpern's wife to a corporation owned wholly by himself, the 170th Street Corporation, of which he was president. This conveyance again was without consideration.

The Court of Appeals affirmed the award on December 31, 1934 (266 N. Y. 495), and payment of the award, which included $300,000 for the taking of the entire building, was made by the city to the claimant on January 30, 1935. Between the time of the affirmance by the Court of Appeals and the payment of the award on January 23, 1935, a new corporation was formed, known as the Straightway Building Corporation, again a dummy corporation, the stock of which was owned by Halpern and members of his family, and whose officers and directors were likewise Halpern and members of his family. It was this corporation which five days later, on February 5, 1935, filed a petition in the borough president's office, Bronx county, for permission to alter the building. The only person not bearing Halpern's name connected with this corporation filed the petition on behalf of the corporation. This was Irving Haas, who himself testified that he was a " partner " of Halpern in many real estate schemes. Amendments to the petition were filed and the building was reconstructed thereafter during 1935 so that in the fall of 1935 the building was completely finished and all the apartments were rented under leases running for a period of at least a year.

Pursuant to the provisions of section 119 of the Greater New York Charter, testimony was taken before the commissioner of accounts for the purpose of investigating the facts relating to the award, and especially as to the breach of claimant's promise to tear down the building.

Halpern refused to sign a waiver of immunity at the hearing. His testimony as well as that of Haas and Kreymborg shows very clearly that the conveyance from Halpern to his wife, from his wife to the 170th Street Realty Corporation, and from this corporation to the Straightway Building Corporation were sham transactions

and must be disregarded in considering the circumstances of the reconstruction and the effect to be given to the promise made by the claimant. Halpern's answering affidavit (p. 18) admits the corporations were used to " undertake building operations." The testimony leaves little doubt that the plans for reconstruction were made, at the latest, right after the trial and before the appeals were taken; that Halpern personally instigated the making of the plans, conferred with his architect and directed the execution of the plans; that Halpern is still the person chiefly interested in the ownership of the property; and that the Straightway Building Corporation is Halpern's *alter ego*. But plaintiff's motion for a new trial is not dependent merely on proof of Halpern's ownership of the property remaining. The uncontroverted fact, as testified to by Halpern and by his architect, that he was the moving party in making and executing plans for alteration of the building, is conclusive, and warrants this court in holding that Halpern testified falsely at the trial and has broken faith with the court and the city of New York. An award based on such false testimony and claimant's bad faith should be set aside and a new trial granted.

This motion before me by the city of New York is to set aside a prior decree made by me in this proceeding in so far as it awards the claimant $300,000 for the total destruction of a building owned by him, and for a new trial of the issue of value. Although only a portion of the building was actually taken, the amount of the award was based solely upon the belief of the court, induced by representations made by claimant, that the building was to be totally demolished and that the untaken portion of the building could be put to no practical use.

The award in question has been affirmed by the Appellate Division and the Court of Appeals. The city predicates this motion upon the claim that the amount of the award fixed by this court was induced by the fraud of the claimant, which was discoverable only after affirmance and payment.

It is my recollection of the events of the trial upon which the questioned award was made, borne out by an inspection of the printed record on appeal, that the amount of such award then made by me was very substantially increased on the assumption that the portion of the building not taken had no practical value and would be demolished. One of the main issues of fact upon that trial was whether or not the taking of part of the building required its total demolition as a practical matter. The city contended that the untaken portion had a substantial value. Claimant asserted that it had none but was, in fact, a liability. Some evidence was taken pro and con, and the court personally viewed the premises. The

troublesome and disputed question bearing directly upon the amount of the award was resolved almost entirely upon claimant's testimony that he could not and would not use the untaken portion of the building. The court expressly stated that no award for total destruction would be made if there was any possibility of using that part of the building not condemned. Claimant repeatedly assured the court that he would demolish the entire building; that he would not ask an award for total demolition and thereafter put any part of it to use. The solemn assertions of claimant, a witness in his own behalf, made under oath in open court, were obviously made for the express purpose of convincing the court that claimant, an experienced real estate operator, qualified to testify as an expert, would not and could not use any portion of the building after taking, and he pledged himself not to do so if the court would base its award upon total demolition. This testimony and pledge were material to the issue presented, and entered largely into the decision made thereon.

Immediately after receiving the award, claimant, disguising his identity by a dummy corporation owned and controlled by him and to which, by various mesne conveyances he conveyed title to the premises, filed application for a permit to remodel the undemolished portion of the building. His acts have been diametrically opposite to those by which he induced the court to make the larger award. His claim that he could not carry out his promise because of the rights of a tenant is specious. He knew the extent of such rights when he made the representations. The court has been deceived, not by passive silence, but by claimant's affirmative assertions, obviously made with an utter lack of good faith and intended to mislead the court as to the true situation.

Claimant contends that the award cannot be reopened after affirmance by the appellate courts. Courts are not so helpless to prevent a miscarriage of justice induced by fraud of a suitor. (*Keister* v. *Rankin*, 34 App. Div. 288, 292; *Clark* v. *Scoville*, 198 N. Y. 279, 286.) Whatever delay there has been in this case is satisfactorily explained. It is further asserted that the statements made by claimant were merely to ease the court's mind and were not stipulations made with the city. This argument admits the deception practiced upon the court. It does not aid claimant, for the city is aggrieved by a decision of the court induced by fraud even though it cannot specifically enforce the promise falsely made. Public rights here involved require a new trial of the issue and the court not only has the power to so order but in the interests of justice is under a duty to do so. (*State of Michigan* v. *Phœnix Bank*, 33 N. Y. 9, 25; *Jordan* v. *Volkenning*, 72 id. 300, 306.)

I am amazed at the deception practiced by the claimant upon the court and his skill in the manipulation of this property should not shield him in enjoying a higher award than he merits. The fact that claimant was dealing with the city is the greater reason why he should have exercised good faith, which is the basic principle of all fair dealings.

The mere fact that the city is compelled in making public improvements to take by condemnation private property is no reason for *mulcting* the taxpayer by trying to obtain high awards through fraud.

The motion to set aside the decree in so far as it makes an award to this claimant is granted, and a new trial ordered. This requires restitution to be made under sections 529 and 554 of the Civil Practice Act.

Settle order on notice providing either that the amount paid to the claimant shall be paid into court within thirty days after service of the order to be signed herein, or in lieu thereof the claimant may file an undertaking for repayment of the money to the city of New York conditioned upon a new trial, or if the claimant is so advised, it may in lieu of either of these above remedies, consent to the appointment of a receiver of the property.